[No. 46744-1-I. Division One. July 16, 2001.]

LITTLE DELI MARTS, INC., *Appellant*, v. THE CITY OF KENT, *Respondent*.

2

*Blair B. Burroughs* (of *Lawler & Burroughs, P.C.*), for appellant.

*P. Stephen DiJulio* and *Marc R. Greenough* (of *Foster Pepper & Shefelman, P.L.L.C.*), for respondent.

WEBSTER, J. — The City of Kent imposed an assessment upon Little Deli Marts for a local improvement district (LID) to construct an arterial road improvement. Although Little Deli missed the statutory appeal deadline, it sued the City collaterally because the assessment came before completion of the improvement. The trial court dismissed the case for lack of (1) subject matter jurisdiction, (2) a claim upon which relief may be granted, and (3) a genuine issue of material fact. Little Deli appeals, arguing it may collaterally attack the assessment because assessments before completion of the improvement constitute a jurisdictional defect. We affirm because there is no jurisdictional defect and, in any case, the assessment was proper.

## FACTS

On May 5, 1998, the Kent City Council passed an ordinance to construct an arterial road improvement at an estimated cost of $43,041,386. Property owners within LID 340 would bear half of the cost. The City Council set a public hearing on LID 340 for June 2. In addition to publishing a notice of the hearing in the *South County Journal*, the City mailed a notice of the hearing to the property owners described on the assessment roll. The City Council held the LID 340 formation hearing on June 2. According to the city clerk, no representative of Little Deli spoke at the LID 340 formation hearing. On that date, the City Council passed Ordinance No. 3404 establishing LID 340 and published it in the *South County Journal*.

Approximately five months later, the City Council ordered a hearing on November 16 regarding the final assess-

ment roll for LID 340. Along with a published notice of the hearing in the *South County Journal*, the City mailed a notice to the property owners described on the assessment roll. Little Deli did not appear at the hearing or file a written protest by that date. Apparently, the City held another final assessment roll hearing on December 7. At that hearing, P. Stephen DiJulio, representing LID 340, noted that the city clerk received a letter dated November 30 from an attorney not associated with counsel for Little Deli in this case, requesting an individual hearing for Little Deli. After DiJulio made an offer of proof regarding notice of the November 16th hearing, the City Council let the roll stand without granting an individual hearing to Little Deli. The City held a supplemental hearing on January 4, 1999 to hear testimony from property owners who submitted timely protests. We assume that Little Deli did not appear at this hearing because it did not submit a timely protest. Two weeks after the last hearing, the City Council passed Ordinance No. 3408, approving the LID 340 assessment roll. The City levied an assessment of $251,443 against Little Deli.

Almost a year later, on December 29, 1999, Little Deli sued for declaratory judgment and injunctive relief, arguing that the final assessment roll and confirmation ordinance were null and void because of a jurisdictional defect. On a motion to dismiss brought by the City, the trial court dismissed the case finding a lack of (1) subject matter jurisdiction, (2) a claim upon which relief can be granted, and (3) a genuine issue of material fact. Little Deli appeals.

## DISCUSSION

### I

### Jurisdictional Defect

Little Deli concedes that, because the deadline for a statutory appeal has passed, its sole recourse is to collaterally attack the final assessment roll. If a property

owner fails to appeal a LID assessment in a timely manner as prescribed by statute, the owner can attack the assessment collaterally only if there is a jurisdictional defect in the LID proceedings. *Patchell v. City of Puyallup*, 37 Wn. App. 434, 441-42, 682 P.2d 913 (1984). There are four bases upon which a property owner may assert a jurisdictional defect: (1) where there is a violation of a constitutional right in the assessment proceedings, (2) where the improvement does not benefit the public, (3) where the improved property is not public property, and (4) where the assessment roll includes property not subject to assessment. *Patchell*, 37 Wn. App. at 442; Philip A. Trautman, *Assessments in Washington*, 40 WASH. L. REV. 100, 126-27 (1965). Washington courts have strictly construed such jurisdictional defects. Trautman, *supra*, at 126-27.

■ In *Patchell*, although the City of Puyallup failed to comply with all statutory notice procedures, the Court of Appeals held that the Patchells' notice of and opportunity to object to an assessment at a hearing prior to final confirmation satisfied constitutional due process requirements. *Patchell*, 37 Wn. App. at 443. Because the notice provisions contained in RCW 35.43.140 and .150 and RCW 35.50.005 are merely statutory—not constitutionally mandated—procedures, the City's failure to comply did not constitute a jurisdictional defect. *Patchell*, 37 Wn. App. at 443-44.

Similarly here, the City of Kent's alleged failure to comply with statutory procedures did not give rise to a jurisdictional defect. According to Little Deli, because the City did not have express statutory authority to order assessments before completion of the LID improvements, there exists a jurisdictional defect. Under *Patchell*, Little Deli has failed to demonstrate a violation of a constitutional right or any other recognizable jurisdictional defect. *Patchell*, 37 Wn. App. at 442. We conclude that the trial court did not err in dismissing this collateral attack because there is no jurisdictional defect.

## II

### Assessment Prior to Completion of Improvement

 As an alternative basis for affirming, we address the main issue of whether Washington statutes authorize an assessment before completion of LID improvements. Article VII, section 9 of the Washington Constitution authorizes the legislature to vest special assessment power in cities by statutory enactment. Trautman, *supra*, at 105-06. The legislature has vested such power in chapters 35.43 and 35.44 RCW, among other statutes. According to Professor Trautman, a city's power to levy assessments does not exist unless a valid statute confers it. Trautman, *supra*, at 105. Nonetheless, we must liberally construe LID statutes to carry out their intended objectives. RCW 35.43.020; Trautman, *supra*, at 107.

RCW 35.43.040 grants broad power to city councils to order a local improvement and levy special assessments to pay for the expense whenever required by public interest or convenience:

> *Whenever the public interest or convenience may require*, the legislative authority of any city or town may order the whole or *any part* of any local improvement including but not restricted to those, or any combination thereof, listed below to be constructed . . . may order any and all work to be done necessary for completion thereof; and may levy and collect special assessments on property specially benefited thereby to pay the whole or any part of the expense thereof, viz:
>
> (1) Alleys, avenues, boulevards, lanes, park drives, parkways, . . . public streets . . . .
>
> . . . .
>
> (11) Street lighting systems together with the expense of furnishing electrical energy, maintenance, and operation[.]

RCW 35.43.040 (emphasis added). In addition, RCW 35.44.020 lists the various costs included in the assessment, including *authorized* construction costs and *estimated* expenses associated with engineering, surveying, title, no-

tices, accounting and administration. Assessments may also take into account costs in acquiring property rights along with legal, financial, appraisal and other expenses *incurred*. RCW 35.44.020(6)-(7). A city may exclude any of the above costs from assessments and pay such expenses from other available funds if designated by ordinance. RCW 35.44.020. Construing the above statutes liberally to carry out their intended objectives, we conclude that a city may levy assessments prior to completion of an improvement.

Further reading of chapters 35.43 and 35.44 RCW shows that no single statute expressly prohibits cities from levying assessments before completion of LID improvements. RCW 35.44.010 states that assessments must be in accordance with "the special benefits conferred" upon all property included within the LID. Contrary to Little Deli's contentions, such benefits need not have accrued before the City may levy assessments. Special benefits include the "opportunity to benefit" so long as the opportunity is not speculative. *City of Seattle v. Rogers Clothing for Men, Inc.*, 114 Wn.2d 213, 231, 787 P.2d 39 (1990). In *Rogers*, the Washington Supreme Court upheld assessments to revitalize and beautify the Downtown Seattle Retail Core Improvement District because the amount of benefit was presumed. *Rogers*, 114 Wn.2d at 232. Many years before, the Court held that assessments for the *estimated* costs of operating and maintaining street lights for a period of 10 years were proper. *Ankeny v. City of Spokane*, 92 Wash. 549, 550-59, 159 P. 806 (1916).

Only RCW 35.44.290 mandates that cities tie every *reassessment* to the *actual cost* of the improvement at the time of its *completion*.[1] RCW 35.44.390, however, provides for supplemental assessments if, by mistake, inadvertence or other reason, the original assessment does not cover the cost and expense of an improvement. Again, the statute covering original assessments allows for authorized con-

---

[1] Usually, a reassessment occurs when a court determines that a city has failed to comply with a statutory requirement in the original assessment. Trautman, *Assessments in Washington, supra* at 131.

struction costs and other estimated costs. RCW 35.44.020.[2]

Construing the above statutes liberally in favor of their intended objectives, we conclude that cities may assess such costs before completion of the improvement. Because the legislature provided for supplementary assessments in RCW 35.43.390, it must have contemplated variations between proposed costs and actual costs. The Oregon Supreme Court adopted this rationale when it approved assessments prior to construction of a sewer project, despite the lack of explicit statutory authority. *Aloha Sanitary Dist. v. Wilkens*, 245 Or. 40, 43-44, 420 P.2d 74 (1966). Moreover, before enactment of the current LID statutes, the Washington Supreme Court found no requirement that completion of an improvement must precede assessments. *Felker v. City of New Whatcom*, 16 Wash. 178, 183, 47 P. 505 (1896). Finally, relevant texts and treatises suggest that this construction of the LID statutes is possible—though not the general practice. 14 EUGENE MCQUILLIN, THE LAW OF MUNICIPAL CORPORATIONS § 38.108, at 332 (Beth A. Jacobsthal & Al Maldonado eds., 3d ed. rev. vol. 1998); ASS'N OF WASH. CITIES ET AL., WASHINGTON STATE LOCAL IMPROVEMENT DISTRICT MANUAL 65 (4th ed. 1996). We find that assessments before completion of an improvement are proper.

## CONCLUSION

Little Deli has failed to assert a recognized jurisdictional defect to collaterally attack the final assessment roll and confirmation ordinance. In any case, we conclude that the City properly levied assessments before completion of the improvement.

We affirm.

BECKER, A.C.J., and ELLINGTON, J., concur.

Review denied at 145 Wn.2d 1030 (2002).

---

[2] Property acquisition costs are not estimates, while legal, financial, appraisal and other expenses must be incurred. RCW 35.44.020.