IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| MICHAEL C. DARLAND and MYRNA DARLAND, husband and wife, et al, | ) ) | No. 34081-3-III |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| SNOQUALMIE PASS UTILITY | ) | |
| DISTRICT, a Washington municipal | ) | |
| corporation, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — Landowners Michael and Myrna Darland sue a water-sewer

district, Snoqualmie Pass Utility District, claiming the utility district breached a contract

to provide water and sewer services or, in the alternative, seeking a refund of special

assessments levied on the Darlands' predecessors in title. The trial court, on summary

judgment, granted the Darlands partial relief. From an adverse second summary

judgment ruling, the Darlands appeal. We affirm the trial court's summary judgment

rulings and remand for possible further proceedings.

FACTS

This lawsuit concerns assessments for water and sewer services on a tract of land and extension of water and sewer utilities to the land. The tract of land comprises four separate, but contiguous, tax parcels and consists of 76.8 acres of unimproved real property. The property sits east of Snoqualmie Pass in Upper Kittitas County, lies near and north of Interstate 90, and encompasses, in part, Gold Creek. Plaintiffs Michael and Myrna Darland are current owners of the tract of land who wish to develop the land for residences. Defendant Snoqualmie Pass Utility District, the local water-sewer district, assessed the property for water and sewer services.

Our lengthy and intricate facts begin in the 1970s. On August 3, 1977, Count Michael Graf Von Holnstein purchased the 76.8 acres from Boise Cascade Home & Land Corporation. Washington law then distinguished between water districts and sewer districts. A 1996 legislative enactment reclassified each water district and each sewer district into a sewer-water district. RCW 57.02.001. Snoqualmie Pass Utility District is such a sewer-water district.

To construct public water system improvements, sewer-water districts may form utility local improvement districts (ULIDs). A sewer-water district forms the ULID to finance improvements that benefit a limited number of properties. After forming the ULID, the utility district sells revenue bonds to pay for the improvements, and the owners of the properties within the ULID pay assessments for the purpose of retiring the revenue

2

bonds. RCW 57.16.050.

In 1978, Kittitas County approved a planned unit development on Michael Von Holnstein's 76.8 acres. As a result of county approval, Kittitas County Sewer District No. 1, a predecessor of Snoqualmie Pass Utility District, included the 76.8 acres in its service area when finalizing the district's comprehensive plan. The Washington State Department of Health, the State Department of Ecology, and Kittitas County endorsed the comprehensive plan.

On May 19, 1982, the board of commissioners of Kittitas County Sewer District No. 1 adopted resolution number 82-3, which approved an assessment for Utility Local Improvement District No. 4. The resolution provided that

> Each of the lots, tracts, parcels of land and other property shown on the assessment roll is declared to be specially benefited by the proposed improvement in at least the amount charged against the same.

Clerk's Papers (CP) at 130. The resolution also declared:

> [A]ll future connections within Utility Local Improvement District No. 4 will be subject to a connection charge or ready-to-serve fee of $1,275.00 each, but the property owner will be entitled to a credit of one such connection charge for each $1,275.00 of assessment against that property up to the full amount of that assessment.

CP at 130. Resolution 82-3 does not identify the nature of the local improvement, but plaintiffs Michael and Myrna Darland allege the improvement concerned sewer service. ULID No. 4 assessed $48,917.25 against 72.47 acres of Michael Von Holnstein's property. Apparently the ULID did not benefit all of Count Von Holnstein's 76.8 acres.

3

No. 34081-3-III
*Darland v. Snoqualmie Pass Util. Dist.*

We assume that Kittitas County Sewer District No. 1 changed its name to Snoqualmie Pass Sewer District of King and Kittitas Counties sometime between May 19, 1982, and July 25, 1986. On July 25, 1986, Snoqualmie Pass Sewer District Superintendent Richard Kloss penned a letter to Snoqualmie Pass landowners, including Michael Von Holnstein. The letter addressed a proposed water system and read, in part:

> SUBJECT: Pass-wide Water System
> The following is in response to several questions asked about the proposed pass-wide water system:
> 1. Financing will be accomplished by the formation of a Utility Local Improvement District (ULID). The bonds would be issued at approximately 8 1/2 percent (today's rate) payable over a 15 year period.
> The preliminary cost per acre is $ 1,425.00 and lots under 1 acre would be $ 475.00 per lot. This method of payment allows all land over 1 acre to be guaranteed 3 residential equivalent hookups (1200 gpd). Lots under 1 acre would be entitled to 1 residential equivalent hookup.
> The monthly payment based on a current 8 1/2 percent interest rate for 15 years would be $14.03 per month per acre, and $4.68 for lots under 1 acre.

CP at 26. Superintendent Kloss' letter did not identify the mentioned ULID by number, but we assume the correspondence referred to ULID No. 7. Michael and Myrna Darland challenge assessments for ULID Nos. 4 and 7.

On December 10, 1986, the Snoqualmie Pass Sewer District Board of Commissioners convened a regular meeting. The board of commissioners discussed water and sewer hookups. The minutes of the meeting read in part:

> The Board of Commissioners stated that this does not include any distribution system for water and that it only runs the water mains by the property making water available to them, this is also true for sewer.

4

CP at 30. Later records also suggest not only a commitment to grant customers hookups, but also a commitment by the utility district to extend sewer and water mains to utility customers' respective properties, a promise contrary to utility industry customs.

On April 8, 1987, the Snoqualmie Pass Sewer District Board of Commissioners convened a regular meeting, during which the board discussed ULID No. 7. Minutes of the April 8 meeting include this entry:

> Commissioner [Stan] DeBruler read the letter of protest from Mr. Von Holstein aloud to the [b]oard members. Von Holstein's property is 76 acres, abuts Mt. Grandeur. Mr. Von Holstein wants out because he has no legal access because of easements. Supt. Kloss explained to the [b]oard members the adjoining property owners and the neighboring easement problems. Easement possibilities were discussed by the [b]oard and it was suggested that a response to Mr. Von Holstein be made as soon as possible.

CP at 173.

On June 24, 1987, the Snoqualmie Pass Sewer District held a public hearing on the final assessment roll for ULID No. 7. At the beginning of the hearing, Erling Johnson asked what constituted ULID No. 7. Sewer District President Norm Craven responded:

> PRES. CRAVEN: ULID # 7 is the installation of a water trunk line from the top of the mountain down along the highway to the Hyak area across under the highway to the—what's the area?
> SUPT. KLOSS: Yellowstone Trail.
> PRES. CRAVEN: Yellowstone Trail. It will tie the whole mountain together into one complete water system. The trunk line at the present time —well 2 years ago—we installed a trunk line from the Alpental area from the wells in Alpental and the storage tanks in Alpental to the summit right outside this building. This ULID takes that trunk line from right outside this building down the pass to the Hyak area to the Yellowstone Trail area.

It installs three 150,000 gallon storage tanks.

CP at 36-37.

During this June 24 public hearing, a representative of Michael Von Holnstein read a letter from Von Holnstein that expressed dismay over assessments on his property with no development potential. The letter claimed the property could not be developed because it lacked a sixty-foot right of way for access as required by the county. After the reading of the letter, the following dialogue transpired:

> PRES. CRAVEN: Is there any other person that would like to address the Board relative to their property?
> JOHN HIGHT: I have a question. With a piece of property big enough to split and divide into another lot, will I have to pay the $710 two times?
> PRES. CRAVEN: You will have to pay another $710.
> SUPT. KLOSS: Property under one acre is entitled to one hookup and for anything above that you have to pay a hookup fee—710 is prepaying that hookup.
> SEC. DEBRULER: These are guaranteed hookups. We are guaranteeing you water. This ULID # 7 is bringing water in trunk line past your property.

CP at 39.

On July 31, 1987, Snoqualmie Pass Sewer District Superintendent Richard Kloss sent notice to all district customers that the district would proceed with ULID No. 7 construction. The notice further declared:

> The District will only be responsible for the water mains and the line from the main to the property line. The water service line is the responsibility of the homeowner or business.
> Prior to any work being done, please contact the District.

6

If you have any questions, please contact me at the above address or phone (206) 434-6600.

CP at 33.

In 1989, Louis Leclezio discussed, with Michael Von Holnstein, purchasing the 76.8 acres of land near Snoqualmie Pass. Leclezio expressed interest in developing the property. To that end, Leclezio formed a joint venture investment group named Miller Shingle Company.

At the time Louis Leclezio negotiated the purchase of the acreage, he knew that the land sat within the Snoqualmie Pass Sewer District boundaries and that the property was subject to ULID Nos. 4 and 7. Leclezio further knew that Michael Von Holnstein had defaulted on the ULID assessments and the assessments had accrued penalties and interest. Finally, Leclezio knew that the sewer district had threatened to foreclose on the land unless Count Von Holnstein paid amounts owed.

Before Miller Shingle Company purchased the 76.8 acres, Louis Leclezio viewed the land and reviewed records at the Snoqualmie Pass Sewer District and at Kittitas County. Leclezio met with the sewer district superintendent Richard Kloss. Leclezio wanted to confirm the availability of water and sewer for the land and its potential for rezoning to commercial use. Due to penalties and interest, the amount owed by Von Holnstein to the district substantially exceeded the property purchase price, and so Leclezio sought to measure the potential gain from payment of the assessments. Leclezio

7

claims that, based on discussions with representatives of Kittitas County and the Snoqualmie Pass Sewer District, he felt confident the county would rezone the land from forest and range land to commercial use. We suspect that the approved planned unit development conflicts with forest and range zoning and diverges from a proposed commercial use zoning. Leclezio does not identify the representatives who spoke with him or specify the comments uttered.

According to Louis Leclezio, during a meeting with Snoqualmie Pass Sewer District Superintendent Kloss, Kloss showed Leclezio a hookup status ledger maintained by the district. The ledger disclosed that the sewer district owed Michael Von Holnstein's property two hundred and thirty water hookups and thirty-eight sewer hookups. Kloss also represented to Leclezio that the district guaranteed the hookups to the land. Finally, Kloss represented to Leclezio that the sewer district guaranteed delivery of the water and sewer lines to the boundary of each tax parcel of property within the district. Thus, Leclezio concluded that, upon payment of the assessments, penalties, and interest accrued on Von Holnstein's land, the district would provide the property a minimum of two hundred and thirty water hookups and thirty-eight sewer hookups and the sewer district would, at its cost, run the sewer and water mains from the district's then existing termini to at least the boundaries of the four tax parcels comprising the property. According to Leclezio, the district's guarantees induced him to purchase the 76.8 acres from Michael Von Holnstein and to pay all assessments, penalties, and

interest owed to the district on closing of the purchase.

Michael Von Holnstein transferred the 76.8 acres of land to Miller Shingle Company on June 1, 1989. The company paid the purchase price to Von Holnstein and $492,781.44 to the Snoqualmie Pass Sewer District for ULID Nos. 4 and 7 assessments, interest, and penalties. On September 12, 1989, the Board of Kittitas County Commissioners approved Leclezio's request to rezone the property from forest and range land to commercial land.

From 1991 to 2000, Snoqualmie Pass Sewer District Superintendent Richard Kloss procured several quit claim transfers that granted the sewer district road and utility access to Miller Shingle Company's 76.8 acres. We assume that these easements would have permitted the laying of sewer and water lines from the sewer district's trunk lines to the 76.8 acres. Nevertheless, the sewer district's board of commissioners knew not of the transfers and never approved the transfers. The parties to this appeal proceed on the assumption the easements were void.

We assume that at some date between 1989 and January 30, 1998, the Snoqualmie Pass Sewer District changed its name to Snoqualmie Pass Utility District, the name of the defendant in this suit. In January 1998, Louis Leclezio commenced preparations for the marketing and sale of the property. He then sought confirmation from the Snoqualmie Pass Utility District as to the number of water and sewer hookups available to the property. In response to the inquiry, the utility district faxed a copy of a one page

document headlined "Hookup Status." CP at 145. The document continued to show the acreage had two hundred and thirty unused water hookups and thirty-eight unused sewer hookups.

On August 11, 1999, the board of commissioners of the Snoqualmie Pass Utility District convened. Meeting minutes from August 11 portend a water shortage within the district. The minutes read, in part:

> SYSTEM CONNECTION CHARGES
> Supt. Kloss distributed copies of a draft resolution from Foster Pepper & Shefelman to rescind pre-paid hookups as was discussed at our last meeting. After a lengthy discussion the Board agreed to research this matter further and see what other alternatives might be available. In the meantime we need to put together a plan before any action can be taken.
> Supt. Lenihan stated that our water rights issue is the biggest problem. With our current water rights we cannot honor the water hookups. He also reported that our wells are not reliable and the plan should include for the cost to put in a new well and additional storage.

CP at 45.

In March 2001, the Snoqualmie Pass Utility District adopted a temporary moratorium on the issuance of new certificates of water availability. The utility district acknowledged nearly exhausting its available water rights. We are unaware if the utility district revoked the moratorium and of the current availability of water to customers within the utility district.

In June 2001, Louis Leclezio received an offer from an unidentified purchaser to purchase the 76.8 acres for $6 million subject to confirmation of available water and

sewer utilities. Thereafter Leclezio and Snoqualmie Pass Utility District exchanged a series of letters, primarily written by attorneys, through which Leclezio sought to confirm the right to water and sewer hookups and in which the utility district denied any guarantee for hookups.

On June 2, 2001, attorney R. Drake Bozarth sent a letter on behalf of Louis Leclezio and Miller Shingle Company to the Snoqualmie Pass Utility District. The letter informed the utility district that a developer wished to acquire the property subject to the district reconfirming in writing the total number of water and sewer hookups available. On July 18, 2001, the Snoqualmie Pass Utility District replied to Drake Bozarth's letter:

> The District's current policies for property owners in the District seeking water service are set forth in Resolution No. 2001-3, adopted by the Board of Commissioners on March 14, 2001, and Resolution No. 2001-6, adopted by the Board of Commissioners on April 25, 2001. Pursuant to Resolution No. 2001-6, a waiting list for the allocation of remaining and future water supply was established.

CP at 49.

On September 5, 2001, Drake Bozarth, on behalf of Louis Leclezio, advised the Snoqualmie Pass Utility District that Leclezio prepaid for two hundred and thirty water hookups and thirty-eight sewer hookups under ULID Nos. 4 and 7. Bozarth again requested that the utility district verify in writing the availability of water and sewer service to the 76.8 acres. On September 6, 2001, the utility district's attorney, Mark Greenough, sent another letter to Bozarth. The letter read in part:

11

With respect to your client's claim that your client's payment of ULID assessments is the equivalent of a system connection charge, there appears to be some misunderstanding in distinguishing ULID assessments and system connection charges. The District has authority to impose ULID assessments under RCW 57.16.050. The District has separate authority to impose system connection charges under RCW 57.08.005. In classifying customers, the District may in its discretion consider capital contributions made to this system including assessments. RCW 57.08.081.

It appears that at certain times in the past, the District has maintained a policy of granting credits against system connection charges for ULID assessments that have been paid. However, a credit against a system connection charge is not the same as payment of the system connection charge itself. Please note that any credit for ULID assessments against future payment of system connection charges is at the discretion of the Board of Commissioners of the District. RCW 57.08.081.

CP at 57-58.

On September 18, 2001, Drake Bozarth, on behalf of Louis Leclezio, notified the Snoqualmie Pass Utility District by letter that its conduct and apparent rescission of its obligations by reason of payment of the ULID assessments would cause a substantial decrease in the market value of the 76.8 acres. On September 23, 2003, Daniel Mallove, new counsel for the utility district, wrote to Brian Dorsey, new counsel for Louis Leclezio:

Your August 6, 2003 letter also asked the District to confirm the entitlement of the Leclezio/Darland property to a certain number of water and sewer connections and the actual capacity of the District to meet what you describe as the District's "obligation under those entitlements."

As you may be aware, the District wrote to R. Drake Bozarth, your clients' previous counsel, on November 15, 2001 concerning the issues you have raised. Please be advised that the District's position has not changed since that letter was sent. Specifically, it is the District's position that your clients do not have a guaranteed entitlement to any water and sewer

12

connections to their property. Rather, pursuant to District Resolution No. 87-11, your clients received a monetary credit to be applied to the system connection charges to be paid by your clients as part of the District's issuance of a Certificate of Water Availability for the subject property.

If your clients wish to obtain water or sewer service, they will need to file an appropriate application for service pursuant to the requirements of Resolution No. 2002-05 or any other applicable resolutions passed by the District.

CP at 63. Thereafter, the proposed sale of the property failed due to the refusal of the utility district to confirm the availability of water and sewer service to the property.

On June 12, 2003, Miller Shingle Company sold the 76.8 acres to Louis Leclezio, Michael Darland, and Myrna Darland. We know nothing about the negotiations leading to the sale. The deed specifically conveyed

water rights, utilities, including Snoqualmie Pass Utility District water and sewer hook-ups, (believed, without warranty by grantor, to consist of 230 water hook-ups and 38 sewer hook-ups).

CP at 115. Under a contract between Louis Leclezio, on the one hand, and Michael and Myrna Darland, on the other hand, the Darlands would hold title to the entire property and would convey twenty-six acres to Leclezio upon the satisfaction of certain conditions, including proof that the property was entitled to receive two hundred and thirty water hookups and thirty-eight sewer hookups. The Darlands intended a residential development on the land and named the proposed development SnoCadia.

Currently the Snoqualmie Pass Utility District sewer main ends two thousand and two hundred feet from the southern line of SnoCadia. The utility district's water main

13

ends four thousand and five hundred feet from the property. No easements permit lateral lines to traverse between the two main lines and the 76.8 acres. Private landowners own some of the land between the water and sewer mains, on the one hand, and the acreage, on the other hand. The Washington State Department of Transportation or United States Forest Service owns other intervening land.

At some unknown date, the Washington State Department of Transportation granted to Michael and Myrna Darland's predecessors a twenty-foot access easement to the property. Nevertheless, Kittitas County requires the Darlands to obtain two sixty-foot access easements in order to develop the acreage for residences.

## PROCEDURE

The case has a long thirteen year history. On July 14, 2004, Michael and Myrna Darland and Louis Leclezio sued Snoqualmie Pass Utility District. The Darlands and Leclezio requested a declaratory judgment, a writ of mandamus, and damages for inverse condemnation, breach of contract, estoppel, and tortious interference. The Darlands and Leclezio asked for an order establishing their right to the delivery of services to the outside boundaries of the 76.8 acres in order to serve two hundred and thirty residential units with water and thirty-eight residences with sewer. The Darlands and Leclezio also sought an order compelling Snoqualmie Pass Utility District to lay lateral lines from its main trunk lines to SnoCadia's outside borders. Later the Darlands would demand that the utility district condemn intervening land to procure for the Darlands sixty-foot access

14

easements.

On August 30, 2004, the Snoqualmie Pass Utility District answered Michael and Myrna Darland's and Louis Leclezio's complaint and primarily denied the complaint's allegations. Nevertheless, the utility district admitted that, through the formation of ULID Nos. 4 and 7, it entered into a contract with the owners of property within those two ULIDs. The contract conferred certain "special benefits" to those property owners. The district raised the affirmative defenses of the statute of limitations, lack of jurisdiction, waiver, estoppel, laches, lack of consideration, anticipatory repudiation, a third party caused any damages, and failure to mitigate.

On January 25, 2005, Michael and Myrna Darland and Louis Leclezio moved for partial summary judgment on the following questions:

> Issue No. 1: Did the District guarantee that the Property would receive 230.07 ERU's of water service and 38.37 ERU's of sewer service as a "special benefit" to the Property by assessing the Property for said service, when all assessments have been paid in full?
> . . . .
> Issue No. 2: Is a[n] ERU [equivalent residential units] defined for purposes of ULID No. 7 as the equivalent of 400 gallons per day (gpd) of water?
> . . . .
> Issue No. 3: Is the District obligated, at its sole expense, to extend the water and sewer mains to at least the boundary of each parcel comprising the Property, with sufficient capacity to deliver at least 400 gallons per day (gpd) of water per hook-up?

CP at 89-90 (boldface omitted).

On March 8, 2005, the Snoqualmie Pass Utility District cross-moved for summary

judgment. The utility district maintained that Michael and Myrna Darland and Louis Leclezio failed to comply with the procedural requirement of RCW 4.96.020 for a claim against the district. In response, the Darlands and Leclezio contended the utility district waived the affirmative defense under RCW 4.96.020 by failing to raise the defense in its answer to the Darlands' and Leclezio's complaint. The Darlands and Leclezio also argued that the utility district should be estopped from asserting the defense because it waited until after the statute of limitations ran before raising a curable procedural defect, the district failed to comply with the claim filing statute, and the district had actual notice of the Darlands' and Leclezio's claims more than a year before they filed suit.

The trial court granted in part and denied in part Michael and Myrna Darlands' and Louis Leclezio's summary judgment motion and denied the Snoqualmie Pass Utility District's motion for summary judgment. The trial court denied the district's motion for summary judgment under the claim filing statute because the district waived or was estopped from asserting the defense of failure to comply with the claim filing statute. The court next concluded that Michael and Myrna Darland and Louis Leclezio were entitled to receive two hundred and thirty hookups of water service at four hundred gallons per day per residence and thirty-eight hookups of sewer service as a special benefit under ULID Nos. 4 and 7. The court denied summary judgment as to the question of whether the utility district must, at its expense, extend the water and sewer mains to the property boundaries. The court found competing facts as to whether the utility

16

district agreed to extend service lines to the 76.8 acres.

The trial court prepared an extensive memorandum decision. On May 16, 2005, the court entered the following order on summary judgment:

> 1. Plaintiffs' approximately 76.8 acres of unimproved real property at issue in this litigation is entitled to receive 230.07 ERUs (equivalent residential units) of water service, at 400 gallons per day per ERU, as a special benefit under ULID No. 7, said benefit having already been paid for in full by plaintiffs and/or their predecessors-in-interest;
> 2. Plaintiffs' said property is also entitled to receive 38.37 ERUs (equivalent residential units) of sewer service as a special benefit under ULID No. 4, said benefit having already been paid for in full by plaintiffs and/or their predecessors-in-interest; and
> 3. Unresolved issues of fact and law remain for further disposition regarding the issue of whether defendant is obligated, at its sole expense, to extend water and sewer mains to the property boundaries so that plaintiffs can enjoy the special benefits for which they have already paid.

CP at 563-64.

In September 2005, the parties entered a memorandum of agreement tentatively resolving the dispute. Under the agreement, each party assumed separate responsibilities to seek necessary right-of-way permits and easements to create access to the 76.8 acres in order to allow development of SnoCadia. The Snoqualmie Pass Utility District incurred the primary responsibility of seeking utility related rights-of-way, easements, and permits. The Darlands acquired the primary responsibility to obtain all access related easements and permits, principally in the form of two sixty-foot wide access roads to the property in order to comply with county requirements for development. The procurement of easements was a condition to the Memorandum of Agreement becoming a binding

17

agreement. Paragraph 12 read, in part:

> In the event the Parties are unable to secure such permits and easements as provided for in paragraph 2 above on or before the expiration of said period, or as may be extended by mutual agreement, this Agreement shall become null and void unless otherwise waived by Plaintiffs. If this Agreement shall become void, the Parties shall retain and otherwise reserve all rights and remedies under that action currently pending in Kittitas County Superior Court, Cause No. 04-2-00411-2 and Plaintiffs shall be entitled to resume prosecution of the same upon ten (10) days written notice to the District.

CP at 1100. On October 4, 2005, the parties entered a stipulation and order staying litigation pending settlement.

At some unknown time, Snoqualmie Pass Utility District requested the Washington State Department of Transportation to deed the utility district a utility easement across the department's abandoned Sunset Highway near the 76.8 acres. In late 2006, the Department of Transportation informed the utility district that the department would take no immediate action on the request pending the completion of environmental studies relating to the department's Interstate 90 Snoqualmie Pass East Project. The Department of Transportation advised the utility district that the department anticipated completion of the environmental studies in the summer of 2007, at which time the department would further consider the district's requests for an easement.

Probably during the time that the Snoqualmie Pass Utility District contacted the Department of Transportation for a utility easement, Michael and Myrna Darland requested access and utility easements from the department in order to serve SnoCadia.

18

On November 16, 2006, the Department of Transportation, by letter and with best wishes for the holiday season, denied the Darlands' request for an access easement because the property lies in the Gold Creek Enhancement Area. The department planned to create the Gold Creek Enhancement Area as a pioneering environmental mitigation project to create passage for animals and fish. The department concluded its November 16 letter:

> At this point it does not seem possible that the State will entertain any additional access or utility requests at this location.

CP at 980.

On August 24, 2007, John Milne, new counsel for the Snoqualmie Pass Utility District, sent the Department of Transportation a request for the extension of a utility easement over a portion of the Old Sunset Highway right-of-way to facilitate water and sewer utility service to Michael and Myrna Darland's 76.8 acres. The August 24 letter reminded the Department of Transportation of past comments by department representatives that the department owns the Old Sunset Highway in fee simple, the highway was surplus to the department's needs, the department would likely convey the highway land to the Darlands for access to SnoCadia, and the department would deed a utility easement to the utility district to service SnoCadia and other land. The letter recognized a contractual obligation of the utility district to provide an extension of utility services to the Darlands' land and the need for the extension of the utility easement to fulfill this duty. Milne's letter claimed that the underground utilities would not impact

19

the environment and noted that the Darlands already owned a twenty-foot easement in the area of the proposed utility easement extension.

On September 17, 2007, the Washington State Department of Transportation replied to the Snoqualmie Pass Utility District's August 24 letter. The letter declined the request to expand the existing twenty-foot access easement's width, but stated the department would recognize a utility easement within the existing twenty-foot easement, as long as the use of the easement accorded with the department's planned actions in the Gold Creek area.

In October 2009, Michael Darland requested the Snoqualmie Pass Utility District pursue an eminent domain action against the State of Washington to obtain road access for SnoCadia. The utility district advised that it would seek condemnation if necessary for utility access, but not for road access. The utility district's counsel advised the district that it lacked authority to condemn property for a road to SnoCadia. The district also offered to allow, within certain liability limiting parameters, the Darlands to pursue an eminent domain suit for road access on behalf of the district.

In 2010, the State Department of Transportation gave notice of its intent to transfer to the United States Forest Service the property over which the Darlands desire an easement. The record does not reflect an actual transfer.

On June 21, 2010, plaintiff Louis Leclezio filed a cross-claim against plaintiffs Michael and Myrna Darland. Leclezio sought a declaration of rights between the parties

under the Leclezio-Darland agreement, wherein the Darlands agreed to reconvey twenty-six acres to Leclezio upon the fulfillment of certain conditions. The Darlands filed an answer to the cross-claim and several counterclaims against Leclezio. On October 11, 2011, the trial court ruled for the Darlands on their cross-claims and terminated any obligation to convey the twenty-six acres. The trial court's order resolved all claims between Leclezio and the Darlands.

On August 20, 2014, Michael and Myrna Darland filed their first amended complaint for declaratory judgment, breach of contract and implied covenant of good faith and fair dealing, negligence, inverse condemnation, estoppel, and unjust enrichment. In January 2015, the Darlands again moved for partial summary judgment. The Darlands requested that the trial court compel the district to use its powers of eminent domain to condemn two sixty-foot-wide access and utility easements over privately held properties so that the Darlands' property could utilize the special benefits conferred by ULID Nos. 4 and 7.

The trial court denied Michael and Myrna Darland's second summary judgment motion. On April 16, 2015, the trial court entered the following order:

> (1) With respect to the issue of road access to plaintiff's[sic] property, because defendant does not have the legal authority to exercise its powers of eminent domain to condemn property for the purpose of providing road access to plaintiffs' property, plaintiffs are not entitled to judgment against defendant as a matter of law on that issue;
> (2) With respect to the issue of extending utility service to plaintiff's [sic] property, questions of fact exist as to (a) which party should pay for the costs of

21

any eminent domain proceeding which may be necessary to acquire the property rights to extend utility service to plaintiff's [sic] property and (b) which party should pay for the costs of installation of the water and sewer mains needed to extend utility service to plaintiff's [sic] property; and

(3) Consequently, Plaintiffs' Motion for Partial Summary Judgment is DENIED.

CP at 1106. In its letter memorandum explaining its decision, the trial court observed

that the Snoqualmie Pass Utility District will not be required to provide access easements,

but will be required to provide utility easements. The court wrote:

> The court denied the motion primarily due to the request for a 60'-wide "access easement." Defendant [Snoqualmie Pass Utility District] has no legal ability to take private property for "access" but would of course be required to use its power to create utility easements. Since plaintiff[s] seek[] access as well as utilities, they seek too much. The court determines as a matter of law that plaintiff is not entitled to an order requiring defendant to provide "access easements."
>
> As to the cost of bringing the utilities to the edge of the property, Judge Cooper explained in 2005 that a question of fact remains regarding whether defendant is required to, at its sole expense, extend water and sewer mains to the property boundary so that plaintiffs can enjoy the special benefits for which they have already paid. Accordingly, that question remains in need of a trial. While it may ultimately be determined after trial that defendant should pay for the legal costs of the eminent domain proceeding and that plaintiffs should pay for the "dirt work" (trenching and pipe costs), the court could also fashion some other sort of remedy. In any event, it does at this point seem beyond dispute that defendant shall have to, whether it wishes or not, exercise its power of eminent domain to ensure that plaintiff has access to the sewer and water benefits already paid for. "In order for a sewer to be susceptible of use to a given parcel of land, there must be access from said land to said sewer without passing through the property of other individuals." *Memorandum Decision*, page 9 (quoting *Towers v. Tacoma*, 151 Wash. 577, 583 (1929)).

CP at 1104.

22

No. 34081-3-III
*Darland v. Snoqualmie Pass Util. Dist.*

On July 8, 2015, Michael and Myrna Darland filed a motion for partial summary judgment seeking to recover the monies paid to the Snoqualmie Pass Utility District under ULID Nos. 4 and 7 for water and sewer service. On October 22, 2015, the utility district cross-moved for summary judgment on the Darlands' claim for the return of money paid. On December 28, 2015, the trial court denied the Darlands' motion for partial summary judgment and granted the district's motion for summary judgment. The trial court thereby dismissed the action for reimbursement. In a memorandum decision, the trial court explained:

> Having exhausted their ability to obtain adequate access to this property (and presumably develop it like originally envisioned), plaintiffs resort to the only remedy they can presently conceive of: a money judgment against defendant for the value paid of past assessments, plus interest. This request is put forth with full knowledge that plaintiffs themselves never paid one penny towards the assessments in question: those assessments were paid for by the previous landowners. The overall condition of the property was known, or should have been known, to plaintiff when it was purchased. The price of the property when plaintiffs purchased it necessarily included every facet of that property; and every tort, contract, easement or other legal burden cognizable at law was transferred with the property to the plaintiffs when they took that deed. There was then and is now no cognizable claim for recoupment of previously paid ULID assessments.
> From the evidence presented it is clear that defendant has done nothing to harm plaintiffs or their property, and the assessments defendants previously collected from the previous landowners were legally collected and legally expended, and nothing has been presented by plaintiff which establishes a need to have a trial about anything. Defendant's motion should be granted, plaintiffs' motion should be denied, *and the case should be dismissed entirely.*

CP at 1510 (emphasis added). On December 28, 2015, the trial court entered an order

23

granting the Snoqualmie Pass Utility District's summary judgment motion, which order

reads, in part:

> IT IS HEREBY ORDERED, ADJUDGED AND DECREED that
> (1) Defendant's Cross-Motion for Summary Judgment is GRANTED;
> (2) Plaintiffs' Motion for Partial Summary Judgment Seeking to Recover
> All Monies Paid to District is DENIED; and this action is dismissed
> without fees or costs to either party.

CP at 1507.

## LAW AND ANALYSIS

Before addressing the assignments of error asserted by the parties, we note an

anomaly regarding this appeal. In the May 16, 2005 summary judgment order, the trial

court ruled in favor of Michael and Myrna Darland that the Snoqualmie Pass Utility

District must provide two hundred thirty water hookups and thirty-eight sewer hookups to

the 76.8 acres. This summary judgment order has never expressly been revoked or

modified. The summary judgment order also reserved for a later hearing the question of

who should pay to extend the water and sewer lines from the respective mainline termini

to the border of SnoCadia. The parties did not further litigate this important question

before the trial court.

The trial court's December 28, 2015 order dismisses the "action." CP at 1507. By

that date, the 2005 trial judge had retired, and a new trial judge entertained the 2015

summary judgment motions. If we read the 2015 order literally, the relief granted to

Michael and Myrna Darland in 2005 became null. Neither party enlightens us as to its or

24

their position on whether the 2015 order voided the 2005 order. Neither party provides legal analysis on the question of whether Snoqualmie Pass Utility District remains obligated under the 2005 order to provide two hundred and thirty water hookups and thirty-eight sewer hookups.

On appeal, Michael and Myrna Darland focus on forcing the Snoqualmie Pass Utility District to condemn access easements to SnoCadia or to refund the special assessments paid. The Darlands assign no express error to the language in the 2015 summary judgment order dismissing the action. Maybe the Darlands lack any interest in the 2005 order unless a court orders the utility district to garner access easements needed by the Darlands to develop SnoCadia. We issue no ruling as to whether the 2015 order dismissing the action abrogated the 2005 order obligating the utility district to provide water and sewer hookups.

*Issue 1: Is the Snoqualmie Pass Utility District obligated at its costs to extend the existing water and sewer lines to Darlands' property under ULID Nos. 4 and 7?*

*Answer 1: We do not answer this question because the parties did not properly brief the issue.*

Michael and Myrna Darland assign error to the 2005 summary judgment order that denied its summary judgment motion to the extent the motion sought a ruling compelling the Snoqualmie Pass Utility District to lay, at the utility's cost, the utility lines between the current mainline termini and SnoCadia's outer boundary. The trial court ruled

25

questions of fact precluded the grant of summary judgment on this claim.

Despite the assignment of error, the only comments from the Darlands, in the body

of their opening appeals brief regarding this assignment of error, read:

> The District also represented that the water and sewer service *was guaranteed and would be delivered to the boundary of each property parcel.*
> Accordingly, the District must fulfill its contractual obligation to deliver the promised water and sewer service. And the only way it can do so is by condemning the two 60'-wide access and utility easements needed to allow the Property to receive the paid-for water and sewer service.

Br. of Appellant at 20 (citations and boldface omitted). This passage suggests that

Michael and Myrna Darland's primary concern is access easements to the property, not

the laying of utility lines by Snoqualmie Pass Utility District to SnoCadia. More

importantly, the Darlands fail to provide any analysis in their opening brief as to the

purported contractual guarantee of delivery of water and sewer service to the SnoCadia

boundary line. This court does not review errors alleged but not argued, briefed, or

supported with citation to authority. RAP 10.3(a)(6); *Valente v. Bailey*, 74 Wn.2d 857,

858, 447 P.2d 589 (1968); *Meeks v. Meeks*, 61 Wn.2d 697, 698, 379 P.2d 982 (1963);

*Avellaneda v. State*, 167 Wn. App. 474, 485 n.5, 273 P.3d 477 (2012).

In their reply brief, Michael and Myrna Darland provide analysis as to

representations uttered by the Snoqualmie Pass Utility District and why those

representations created an enforceable contract. The Darlands also forward legal

authority to support their contention that the utility district is bound by comments of its

superintendent, Richard Kloss. We decline to entertain this argument, however, because the Darlands failed to submit their argument in their opening brief. Questions not argued in appellant's principal brief cannot be considered on appeal, though they are argued in respondent's brief and in appellant's reply brief. *Royal Dairy Products Co. v. Spokane Dairy Products Co.*, 129 Wash. 424, 427-28, 225 P. 412 (1924); *Stickler v. Giles*, 9 Wash. 147, 148, 37 P. 293 (1894); *FPA Crescent Associates, LLC v. Jamie's LLC*, 190 Wn. App. 666, 679, 360 P.3d 934 (2015). Argument and authority raised for the first time in a reply brief comes too late. *In re Marriage of Sacco*, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990); *King v. Rice*, 146 Wn. App. 662, 673, 191 P.3d 946 (2008).

In its opening brief, the Snoqualmie Pass Utility District writes:

> Although Judge Cooper [the judge entering the 2005 order] denied this motion without explanation on September 15, 2005 (CP at 1903-05), Judge Sparks [the judge entering the 2015 order] appears to have granted summary judgment to the District based on similar arguments in his Order of December 28, 2015. To the extent [the] Darland[s] appeals the dismissal of their claims on the basis that they are barred by RCW 57.16.090, the District cross-appeals the order of Judge Cooper which dismissed the District's similar motion in 2005.

Resp't's Br. at 2 n.1. Nevertheless, the utility district presents no argument challenging the 2005 order at least to the extent the order imposes an obligation on it to provide the hookups. As already stated, this court does not review errors alleged but not argued, briefed, or supported with citation to authority. *Valente v. Bailey*, 74 Wn.2d at 858 (1968); *Meeks v. Meeks*, 61 Wn.2d at 698 (1963); *Avellaneda v. State*, 167 Wn. App. at

27

485 n.5 (2012). Assuming that the utility district considers a ruling that RCW 57.16.100 bars Michael and Myrna Darland from challenging the ULID assessments also constitutes a ruling dismissing the Darlands' breach of contract claim, we disagree.

*Issue 2: Did the trial court err when ruling that the Snoqualmie Pass Utility District lacks legal authority to condemn private property for access and utility easements benefitting the Darlands' property?*

*Answer 2: We do not address this issue because the Snoqualmie Pass Utility District lacks any obligation to condemn property for the purpose of access to the Darlands' land.*

The trial court ruled that the Snoqualmie Pass Utility District lacks legal authority to condemn property for the purpose of road access to a potential customer of the water-sewer district. Michael and Myrna Darland assign legal error to this ruling. The Darlands also, however, assign error to the trial court's purported ruling that the utility district lacks authority to condemn property for utility easements. We find no such second ruling by the trial court. Perhaps the Darlands combine the two forms of easements in one assignment of error with the understanding that a utility easement may lay within the access easement. Nevertheless, the easements are distinct. We only address the ruling announced by the trial court.

Michael and Myrna Darland contend that the Snoqualmie Pass Utility District holds a contractual obligation to provide water service to two hundred and thirty

28

residences and sewer service to thirty-eight residences to the SnoCadia property. The trial court agreed with the Darlands' position that service must be made available, at least at the termini of the respective mainlines and reserved for a factual hearing the question of who extends the lines from the mainlines to the 76.8 acres border.

Michael and Myrna Darland further assert that, in order to satisfy its contractual obligations to provide services, the Snoqualmie Pass Utility District must exercise its power of eminent domain to condemn two sixty-foot road easements from the utility district mainline to the Darlands' four tax parcels of land because Kittitas County requires these access easements in order for the Darlands to subdivide and develop their land. According to the Darlands, without the access easements, the Darlands will not be able to benefit from the water and sewer hookups promised by the utility district, and, thus, to fulfill its obligations, the district must take steps to permit the Darlands to subdivide the land.

The parties discuss at length whether a water-sewer district has authority to condemn land for roads. Nevertheless, we need not address whether a water-sewer district holds authority to condemn property for access to a utility customer's land, because the Snoqualmie Pass Utility District never contracted to condemn or build roads for SnoCadia. Michael and Myrna Darland present strong evidence that the utility district promised to lay the water and sewer lines to the SnoCadia border. Nevertheless, the Darlands impart no evidence that the utility district represented that it would provide

29

access easements for SnoCadia.

The Darlands strenuously argue that, because the utility district owes them a duty to extend water and sewer services, the utility district must take additional steps to help develop SnoCadia so that the Darlands may enjoy the services. Nevertheless, the Darlands cite no authority for this argument. We doubt any authority exists for the proposition that a utility's promise to supply water and sewer service includes a commitment to also assure the property with road access. Such a rule could financially burden small utilities. Regardless, this court does not review errors alleged but not supported with citation to authority. RAP 10.3; *Avellaneda v. State*, 167 Wn. App. at 485 n.5 (2012).

*Issue 3: Whether RCW 57.16.100(1) bars the Darlands from seeking a refund of assessments paid under ULID Nos. 4 and 7?*

*Answer 3: Yes.*

In the event this court imposes no obligation on the Snoqualmie Pass Utility District to condemn access to SnoCadia, the Darlands seek recovery of assessments paid by their predecessors to the utility district for ULID Nos. 4 and 7. To that end, the Darlands forward numerous arguments. The Snoqualmie Pass Utility District also asserts some defenses. We address only one of those defenses we deem controlling. The utility district contends that RCW 57.16.100(1) conclusively bars the Darlands' claim for a refund of assessments because of an untimely challenge. We agree.

30

Water-sewer districts are special purpose local government bodies whose powers and duties are generally codified in Title 57 RCW. RCW 57.08.005 establishes the general powers of a water-sewer district. Those powers include the authority to compel all landowners within its service area to connect to the district's sewer system and to establish local improvement districts and levy assessments on property owners within the local improvement district. RCW 57.08.005(9), (19).

The Washington Legislature invests local governments with the authority to defray the cost of local improvements by specially assessing nearby properties benefited from the improvements. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d 225, 228, 119 P.3d 325 (2005); Philip A. Trautman, *Assessments in Washington*, 40 WASH. L. REV. 100, 100 (1965). Chapter 57.16 RCW outlines the process for a water-sewer district to create a utility local improvement district within its territory and impose special assessments on property benefited by the local improvement in order to pay for the improvement. The process echoes the creation of local improvement districts by other governing bodies.

The sewer-water district's board of commissioners may initiate the formation of a local improvement district by adopting a resolution that establishes the nature and territorial extent of the proposed improvement, estimates the cost of the improvement, states the proportionate amount of the cost that will be borne by the property within the proposed improvement district, and fixes a date, time, and place for a public hearing on

31

the formation of the proposed improvement district. RCW 57.16.060. The district then sends notice to landowners of the public hearing. RCW 57.16.060. At the public hearing, the board of commissioners shall hear objections from landowners and may narrow the boundary of the proposed improvement district. RCW 57.16.062. If the commissioners find that the improvement district should be formed, the board adopts a resolution approving the district. RCW 57.16.062. Upon formation of the utility local improvement district, the board of commissioners next files with the county treasurer a roll levying assessments in the amount to be paid by special assessment against the property situated within the improvement district in proportion to the special benefits to be derived by the property therein from the improvements. RCW 57.16.062.

Before approval of the special assessment roll, the water-sewer district must publish notice in a newspaper and send notice to landowners fixing the time within which protests must be filed with the utility district secretary against any assessments and fixing a time when a hearing will be held by the commissioners on the protests. RCW 57.16.070. At the hearing, the commissioners may correct, change, or modify the roll. RCW 57.16.070. An objecting landowner may appeal the decision of the district board of commissioners to the superior court within ten days after publication of a notice confirming the assessment roll. RCW 57.16.090.

RCW 57.16.100(1) prohibits any collateral attack on an assessment. The statute reads:

[T]he assessment roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this chapter.

We note that, at the time of adoption of ULID Nos. 4 and 7, Snoqualmie Pass Utility District was only a sewer district, and, thus, another statute may have controlled challenges to special assessments. We suspect, however, that the statute likely had a similar time limit to special assessments challenges, and neither party forwards a predecessor statute.

Washington courts have reviewed and applied RCW 57.16.100 or similar statutes to the end of summarily rejecting a landowner's challenge to a ULID assessment when the challenger failed to object before the utility district board of commissioners or failed to timely file an appeal in court. *King County v. Mercer Island Sewer District*, 69 Wn.2d 958 958-60, 421 P.2d 682 (1966); *Wheeler v. Ronald Sewer District*, 58 Wn.2d 444, 447, 364 P.2d 30 (1961); *In re Utility Local Improvement District No. 2*, 5 Wn. App. 510, 513-15, 488 P.2d 770 (1971). The court in *Wheeler v. Ronald Sewer District* mentioned the policy considerations inherent in the statutes:

The procedure . . . is summary in nature, and the cause is given precedence over all civil causes pending except eminent domain proceedings and actions of forcible entry and detainer. It was the evident purpose of the legislature to provide a speedy and adequate remedy for any person feeling aggrieved by the decision of the commission and to prevent such a person from harassing the commission with lengthy litigation.

33

58 Wn.2d at 446. In *King County v. Mercer Island Sewer District*, the court observed:

> In it [*Wheeler*], this court simply gave the intended effect to a statute which is clear and unambiguous in its terms and the constitutionality of which has not been challenged. It does not deprive the property owner of a right of judicial review of administrative acts, but simply provides and requires that a certain procedure be followed in obtaining such a review. The requirement is reasonable on its face and serves an obviously legitimate purpose.

69 Wn.2d at 960.

Michael and Myrna Darland seek to avoid application of RCW 57.16.100 by stating they do not challenge the validity of the ULIDs or the assessments levied thereunder. The demand for a return of the assessments may be an argument alternative to the Darlands' principal contention that the Snoqualmie Pass Utility District must condemn access easements. Nevertheless, the Darlands want a refund of the assessments on the basis of their land not being benefited by the ULIDs. The gist of their argument is that the utility district erroneously assessed their land because the land receives no benefit from the ULIDs.

Washington courts may entertain a suit alleging jurisdictional defects in a local improvement district proceeding despite the challenger ignoring statutory deadlines. *Tiffany Family Trust Corp. v. City of Kent*, 155 Wn.2d at 234-35 (2005). If a property owner fails to appeal a ULID assessment in a timely manner as prescribed by statute, the owner can attack the assessment collaterally only if there is a jurisdictional defect in the ULID proceedings. *Little Deli Marts, Inc. v. City of Kent*, 108 Wn. App. 1, 4-5, 32 P.3d

286 (2001); *Patchell v. City of Puyallup*, 37 Wn. App. 434, 441-42, 682 P.2d 913 (1984).
Case law limits jurisdictional defects to: (1) a violation of a constitutional right in the
assessment proceedings, (2) the improvement does not benefit the public, (3) the
improved property is not public property, and (4) the assessment roll includes property
not subject to assessment. *Little Deli Marts, Inc. v. City of Kent*, 108 Wn. App. at 5;
*Patchell v. City of Puyallup*, 37 Wn. App. at 442; Trautman, *supra*, 126-27 (1965).
Washington courts strictly construe such jurisdictional defects. *Little Deli Marts, Inc. v.
City of Kent*, 108 Wn. App. at 5.

A jurisdictional challenge seeks to invalidate the entire underlying ULID. *Tiffany
Family Trust Corp. v. City of Kent*, 155 Wn.2d at 235-36 (2005). Challenges directed
toward the amount of a specific assessment or that the local government levied the
assessment without regard to benefits are not jurisdictional defects and must be brought
within the existing statutory framework. *City of Longview v. Longview Co.*, 21 Wn.2d
248, 252, 150 P.2d 395 (1944). Michael and Myrna Darland do not seek to invalidate
ULID Nos. 4 and 7. They claim their property reaps no benefit from the ULIDs.
Regardless of whether the Darlands sue for equitable estoppel, promissory estoppel,
unjust enrichment, breach of the implied covenant of good faith, impossibility of
performance, rescission, or restitution, they still argue a missing profit to their property.

The Darlands characterize the imposition of a ten-day limitation on their challenge
as egregious because their predecessors could not have known that, within the ten-day

35

deadline, the Snoqualmie Pass Utility District never intended to fulfill its promise to supply water and sewer service. We recognize the absurdity of requiring a legal challenge to conduct before the conduct occurs. Nevertheless, the remedy for any breach of a promise is not a refund of the assessment, but an order compelling the fulfillment of the promise or an award of contract damages. Although the utility district uttered comments years after the assessment that it might not provide services, the district now remains willing for the Darlands to tie to the utility's lines. A 2005 court order affirmed the utility district's obligation to supply water and sewer services.

We also note that the conditions that erect difficulties for SnoCadia to benefit from the ULIDs were also present at the time of the ULID assessments. In 1982 and in 1987, the 76.8 acres lacked sixty-foot access easements. The same distances between the Snoqualmie Pass Utility District water mainline termini and the sewer mainline termini to the 76.8 acres existed then as they remain today. Michael Von Holnstein complained about those very conditions to the board of commissioners in 1982 and 1987. If Count Von Holnstein determined that the problematic circumstances resulted in a lack of benefits to the 76.8 acres, he had the right to file a lawsuit challenging the ULIDs within ten days of the respective assessments for the ULIDs.

Because we affirm dismissal of Michael and Myrna Darland's request for reimbursement of special assessments paid, we do not address Snoqualmie Pass Utility District's contentions that the statute of limitations bars the claim and the Darlands lack

36

No. 34081-3-III
*Darland v. Snoqualmie Pass Util. Dist.*

standing to assert the claim.

## CONCLUSION

We affirm the trial court's 2005 and 2015 summary judgment orders. We remand

to the trial court for what, if any, further proceedings are appropriate.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

Fearing, C.J.

WE CONCUR:

Lawrence-Berrey, J.

Pennell, J.

37